# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

BARBARA LIBBIN, AND
I LOVE EARS TRAVEL LLC                                    CASE NO.:

     Plaintiffs,

v.

LAURALYN JOHNSON, AND
SMART MOMS TRAVEL LLC

     Defendants.

_____/

## COMPLAINT

COMES NOW, the Plaintiffs, Barabara Libbin, and her travel company, I Love Ears Travel, LLC, through undersigned counsel, and respectfully submits this Complaint for Damages against Defendants(s), Smart Moms Travel LLC ("Smart Moms"), and Lauralyn Johnson ("Johnson"), collectively known as "Defendants."

## NATURE OF THE ACTION

1. This is an action for defamation, defamation per se, defamation by implication, breach of contract, promissory estoppel, intentional and negligent infliction of emotional distress, declaratory relief, and related claims arising out of Defendants' wrongful termination of Plaintiff's relationship with Smart Moms Travel, LLC, their systematic underpayment and withholding of earned commissions, and their subsequent campaign to falsely brand the Plaintiff a thief and corrupt leader within the Smart Moms' community.

2. Contractually, the Plaintiff seeks to recover unpaid and underpaid commissions owed under her Independent Contractor Agreement ("Agreement") and a later written modification issued by Defendant Johnson, which increased the Plaintiff's commission

1

rates and promised additional compensation based on volume, leadership status, and engagement tasks. Despite the Plaintiff's performance and the Agreement's express post-termination protections, Defendants refused to pay the Plaintiff "any and all compensation earned" on her bookings and attempted to use restrictive covenants to chill her ability to continue working in the travel industry.

3. Beyond the Plaintiff's contractual disputes, the Plaintiff seeks redress for Defendants' knowing and malicious publication of false statements in lengthy pre-recorded audio broadcasts to other Smart Moms agents, and in related communications, accusing the Plaintiff of being "corrupted," engaging in "lie cheat steal" schemes, manipulating payroll and commission splits, "taking from" Smart Moms, and "stealing from somebody else." These statements falsely impute criminal conduct and serious professional dishonesty to the Plaintiff and were calculated to destroy her reputation, to justify Defendants' refusal to pay commissions, and to deter agents, vendors, host agencies, and clients from doing business with her.

4. Defendants' false statements constitute defamation and have directly and proximately caused the Plaintiff to incur severe reputational harm, emotional distress, and substantial economic loss, including the loss of existing and prospective clients and commissions.

**PARTIES**

5. Plaintiff, Barbra Libbin, is a natural person and, at all relevant times, has been a citizen and resident of the State of Maryland. The Plaintiff is a professional travel advisor who, during the relevant period, operated her travel business in affiliation with Smart Moms.

6. Plaintiff I Love Ears Travel, LLC ("I Love Ears") is a limited liability company organized and existing under the laws of the State of Maryland. At all times material hereto,

2

Plaintiff Barbara Libbin owned and operated I Love Ears, alongside her husband, Gary Libbin, and conducted her travel-advisory business through I Love Ears, such that the reputational and economic harms alleged in this Complaint were suffered by Mr. and Ms. Libbin individually and by I Love Ears as her travel business entity.

7. Defendant, Lauralyn "LJ" Johnson, is a natural person and, on information and belief, a citizen and resident of the State of Florida, residing in Orange County, Florida. At all relevant times, Johnson was the owner, manager, and controlling member of Smart Moms.

8. Defendant, Smart Moms Travel, LLC, is a Florida limited liability company with its principal place of business located at 10137 Canopy Tree Court, Orlando, Florida. At all relevant times, Johnson was acting as an owner, manager, and authorized representative of Smart Moms, and her acts alleged herein are attributable to Smart Moms under the doctrines of respondeat superior, agency, and ratification.

## JURISDICTION AND VENUE

9. This court has subject-matter jurisdiction over this action pursuant to 23 U.S.C. §1332(a) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and parties are citizens of different states. Further, the Defendants expressly consented to the exercise of jurisdiction by the courts in Polk County, Florida, including this Court, by virtue of paragraph SEVENTEEN of the Agreement, in which the parties agreed that "[a]ny claims made or controversies that arise out of or in relation to this Agreement will be settled by the courts of Polk County in the State of Florida.".

## FACTUAL ALLEGATIONS

### Plaintiff's Relationship With Smart Moms

10. Small Moms operates as a travel agency business that recruits travel advisors as independent contractors, many of whom are women and mothers, and markets Disney and other family travel services to consumers nationwide.

11. On or about December 21, 2021, the Plaintiff entered into a written Independent Contractor Agreement with Smart Moms.

12. Under paragraph THIRD (A) of the Agreement, Smart Moms agreed that Plaintiff would be "entitled to payment of commissions to total 50% of the commissions received by the travel business for [Plaintiff's] sales."

13. Under paragraph THIRD (C) of the Agreement, Smart Moms agreed to pay Plaintiff's share of commissions "within the following month after receiving commission from the supplier."

14. Paragraph FIFTEENTH of the Agreement expressly provides that, upon termination of the Agreement for any reason, Plaintiff "will be entitled to any and all compensation earned by her/him prior to the termination date," thereby obligating Smart Moms to pay the Plaintiff all commissions on bookings made prior to termination once commissions were received from suppliers, regardless of whether the  supplier paid before or after termination.

15. The Plaintiff consistently performed at a high level for Smart Moms, developed a substantial book of travel clients, and was elevated into leadership roles, including as a liaison and "Team Leader," overseeing and mentoring other agents on behalf of Smart Moms.

**The March 1, 2022, Email**

16. On March 1, 2022, Johnson, acting on behalf of Smart Moms, sent a written email to the Plaintiff and other Smart Moms agents with the subject "Our recent SMTA updates!" (the "Email")

17. In the Email, Johnson explicitly contrasted the 50% commission split outlined in the Agreement with a new commission structure, stating that before March 2022, an agent would earn 50% of the commission received by Smart Moms but that, "On payments credited to the agency after March 1, 2022, you will earn 55%," and further that agents who reached  certain commission volume thresholds and leadership or "Engagement" benchmarks would earn up to 60%, 65%, or even 70% of the commission received by the agency.

18. Johnson further explained that Team Leaders would receive an additional 5% commission and that agents who met the Engagement criteria would earn an additional 5% "Engagement Bonus" on top of their base split.

19. The March 1, 2022, email was a written modification of the Agreement's compensation terms, expressly increasing the Plaintiff's commission split from 50% to 55%–70% for commissions credited to Smart Moms after March 1, 2022. At relevant times, Smart Moms consistently paid the Plaintiff at higher-than-50% commission levels

20. In reliance on the March 1 email and the new commission structure, the Plaintiff continued to devote substantial time and effort to selling travel under the Smart Moms brand, mentoring other agents, fulfilling Team Leader responsibilities, and performing engagement tasks designed by Johnson.

21. Smart Moms at times paid the Plaintiff at higher-than-50% commission levels consistent with the March 1, 2022, email, further confirming that the modified commission structure was in effect.

**Smart Moms' Non/Underpayments and Termination of the Plaintiff**

22. Despite the plain language of the Agreement and the Email, Smart Moms failed and subsequently refused to pay Plaintiff all commissions owed, at the correct commission percentage, on numerous bookings she generated after March 1, 2022.

23. Smart Moms also failed and refused to pay post-termination commissions on pre-termination bookings, even after Smart Moms received commissions from suppliers and despite paragraph FIFTEENTH's requirement that the Plaintiff receive "any and all compensation earned" prior to termination.

24. When Plaintiff raised concerns about unpaid and underpaid commissions and sought an accounting of same, pursuant to her contractual right to examine Smart Moms' books and records as related to her compensation, Defendants did not provide transparent or adequate accounting.

25. On or about October 29, 2025, Johnson terminated Plaintiff's relationship with Smart Moms, while retaining commissions on Plaintiff's bookings and refusing to pay all amounts owed and earned after the March 1, 2022, email.

**Johnson's Broadcasts Accusing Plaintiff of Theft and Dishonesty**

26. Shortly after Johnson terminated Plaintiff's relationship with Smart Moms, Johnson recorded and disseminated a lengthy, approximately fifty-seven (57) minutes in duration,

pre-recorded audio message to dozens of Smart Moms' agents and leadership (the "Broadcast").

27. In the Broadcast, Johnson purported to explain why there had been "mass terminations and resignations" within Smart Moms' leadership.

28. In substance and in part, Johnson stated that "all of [her] leadership were involved in the lie cheat steal issues that were going on."

29. Johnson stated that there were "issues with payroll" and "issues with the splits not being set up correctly inside of payroll," and that these issues were "authorized from various levels of leadership."

30. Johnson further stated that, for example, "if you were supposed to earn 5% and the agency was supposed to earn the other 5%, if you were corrupted, you may have been set up to earn all of it" and described the situation as "literally just about like taking from me."

31. Johnson told listeners that "everybody who's getting paid incorrectly needs to leave the agency period," that she had "terminated all of the liaisons" and "terminated all of the team leaders because they were all affected by it," and that "everybody that [she] knew was … accepting this even had to go."

32. Johnson further stated, in substance, that leadership had offered agents a "pay situation that's, you know, stealing from somebody else" and rhetorically asked departing agents whether they were "going to steal that money somewhere else," "work for it somewhere else," or "sell [themselves] somewhere else."

33. At all relevant times, the Plaintiff was a liaison and Team Leader and was widely known within the Smart Moms community as part of Johnson's "leadership" group.

34. Prior to the Broadcast, Johnson terminated Plaintiff, along with all vice presidents, directors, and team leaders who had a 's relationship with Smart Moms.

35. The recipients of the Broadcast, including agents who personally knew the Plaintiff and had worked under her leadership, understood Johnson's references to "leadership," "liaisons," and "team leaders" who were "involved in the lie cheat steal issues," "corrupted," "taking from [her]," and "stealing from somebody else" to include the Plaintiff.

36. Johnson widely disseminated the Broadcast to Smart Moms' agents, including Plaintiff's colleagues, sub-agents, and business contacts, and portions of the Broadcast were shared with third parties outside of Smart Moms.

37. Johnson's statements in the Broadcast that accused Plaintiff of involvement in "lie cheat steal issues," corruption, payroll and commission manipulation, and "stealing" money from Smart Moms are false.

38. On or about November 14, 2025, Johnson appeared in a televised news segment on NBC Connecticut concerning Smart Moms and its former agents (the "NBC Interview"). In that interview, Johnson discussed the same "lie cheat steal" issues she had referenced in the Broadcast and, in substance, repeated and amplified the accusation that former leaders had engaged in financial wrongdoing and misconduct with respect to commissions and agency funds.

39. Viewers of the NBC Interview who were familiar with Smart Moms and its leadership, including existing and prospective clients and industry partners of Plaintiffs, reasonably understood Johnson's statements to refer to Plaintiff Libbin and the small, identifiable group of liaisons and team leaders who had recently been terminated or forced out.

40. The NBC Interview significantly broadened the audience for Johnson's false accusations, causing further reputational and economic harm to Plaintiffs beyond the Smart Moms agent community.

41. The Plaintiff never stole, embezzled, misappropriated, or unlawfully retained any funds that belonged to Smart Moms or its principals; never manipulated commission "splits" in order to "earn all of it"; and never participated in any scheme to "take" the agency's share of commissions.

42. Any commissions Plaintiff received above 50% were expressly authorized by Johnson in her March 1, 2022, email and the commission structure she created and implemented.

43. In the Broadcast, Johnson admitted that she "didn't know the discussions that had been had," "didn't know how things happened," "didn't dig into [agents'] resignations," and "simply… blanket terminated everybody that [she] knew was… accepting this."

44. Johnson further admitted that she did not "even probably know what [agents] did or that [they were] involved," yet nonetheless accused Plaintiff of theft, corruption, and "stealing" money.

45. Johnson either knew that her accusations against Plaintiff were false or acted with reckless disregard for their truth or falsity by making grave accusations of criminal and professional misconduct while openly acknowledging that she had not investigated and did not know what any particular leader had done.

46. At a minimum, Johnson failed to exercise reasonable care to ascertain the truth or falsity of the allegations before publishing them to the Plaintiff's colleagues and business contacts.

47. As the owner and manager of Smart Moms, Johnson made the Broadcast within the course and scope of her agency and authority for Smart Moms; Therefore, Smart Moms is liable for Johnson's defamatory statements under the doctrines of respondeat superior, agency, and ratification.

48. The Defendants' false statements have caused and continue to cause the Plaintiff serious harm, including but not limited to:

    a. Loss of reputation and standing in the travel industry;

    b. Loss of existing and prospective clients, bookings, and commissions;

    c. Loss of relationships with subordinate agents;

    d. Emotional distress, humiliation, and embarrassment;

    e. Difficulty securing new host-agency and vendor relationships;

49. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial but well in excess of $75,000, exclusive of interest and costs.

## <u>COUNT I</u>
## <u>DEFAMATION PER SE AS TO DEFENDANT JOHNSON</u>

50. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

51. Johnson, individually and as owner of Smart Moms, published the false statements described above in the Broadcast to multiple third parties, including the Plaintiff's current and former colleagues, agents, and industry contacts.

52. Johnson's statements expressly and impliedly accused the Plaintiff of engaging in criminal conduct, including theft, embezzlement, and misappropriation of company

funds, and of serious professional dishonesty in the performance of her duties as a travel advisor and Team Leader.

53. Accusations that a person is "corrupted," involved in "lie cheat steal issues," "taking" money from her employer, "stealing from somebody else," and "steal[ing] that money somewhere else" are reasonably understood as charging the person with crimes involving moral turpitude and dishonesty and are defamatory per se.

54. These statements also directly impugn the Plaintiff's fitness and integrity in her profession and are defamatory per se as statements injurious to the Plaintiff in her trade or profession.

55. Johnson either knew these statements were false when she made them or acted with reckless disregard as to their truth or falsity, and in any event failed to act as a reasonably prudent person would under the circumstances.

56. Johnson's statements were not privileged, and any conditional privilege was abused and forfeited by virtue of Johnson's malice, reckless disregard for the truth, excessive publication, and failure to undertake any meaningful investigation.

57. As a direct and proximate result of Johnson's defamation per se, Plaintiff is entitled to presumed damages for harm to her reputation and standing, as well as actual damages, including economic losses and emotional distress, in an amount to be determined at trial.

## **COUNT II**
## **DEFAMATION AS TO DEFENDANT JOHNSON**

58. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

59. Johnson's statements described above were false, defamatory statements of fact concerning the Plaintiff that exposed the Plaintiff to hatred, distrust, ridicule, and contempt and tended to injure her in her reputation and business.

60. Johnson published these statements to multiple third parties without privilege and with the sole intent to harm the Plaintiff.

61. As a direct and proximate result of Johnson's defamation, Plaintiff is entitled to presumed damages for harm to her reputation and standing, as well as actual damages, including economic losses and emotional distress, in an amount to be determined at trial.

## <u>COUNT III</u>
## <u>DEFAMATION BY IMPLICATION AS TO DEFENDANT JOHNSON</u>

62. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

63. Johnson's deliberate juxtaposition of facts, omissions, and rhetorical questions created and conveyed false and defamatory implications and innuendos about Plaintiff.

64. In particular, Johnson framed the Broadcast as an explanation of "mass terminations and resignations," asserting that "all of [her] leadership" was involved in "lie cheat steal issues." Johnson accused unnamed leaders of "stealing from somebody else" and "taking from" her, described terminating all agents and team leaders "because they were all affected by it," and then invited agents to "come back" if they were willing to stop "stealing" and do "good things in the future. "In context, these statements falsely implied that Plaintiff, as a terminated liaison and Team Leader, had engaged in criminal and unethical conduct, including theft and embezzlement.

65. Johnson intended or reasonably should have expected that listeners to the Broadcast would draw these false and defamatory implications about the Plaintiff.

66. These implications are false and have caused the Plaintiff the damages described above.

## COUNT IV
## DEFAMATION PER SE AS TO SMART MOMS TRAVEL, LLC
## -VICARIOUS LIABILITY

67. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

68. At all times material, Johnson was acting within the course and scope of her authority as owner, manager, and agent of Smart Moms when she recorded and disseminated the Broadcast.

69. Johnson used Smart Moms' communication channels and agent lists to distribute the Broadcast and purported to speak in her capacity as the owner of Smart Moms, explaining company decisions.

70. Smart Moms authorized, ratified, and/or failed to take reasonable steps to correct or retract Johnson's defamatory statements after being put on notice of their falsity.

71. Accordingly, Smart Moms is vicariously liable for Johnson's defamation per se as alleged in Count I.

## COUNT V
## DEFAMATION AS TO SMART MOMS TRAVEL LLC

72. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

73. In the alternative to Count IV, Smart Moms is liable for Johnson's defamatory statements under the doctrines of respondeat superior, agency, and ratification.

74. As a direct and proximate result, the Plaintiff has suffered the damages described above.

## COUNT VI
## DEFAMATION BY IMPLICATION AS TO SMART MOMS TRAVEL LLC

75. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

76. Smart Moms is vicariously liable for Johnson's defamatory implications and innuendo as alleged in Count III.

## COUNT VII
## BREACH OF CONTRACT

77. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

78. The Agreement and the March 1, 2022, email constitute a valid and enforceable contract between Plaintiff and Smart Moms governing the Plaintiff's compensation.

79. Smart Moms breached the Agreement and its modifications in one or more of the following ways:

    f.   Failing to pay the Plaintiff at least 50% of commissions received by Smart Moms on the Plaintiff's sales, as required by paragraph THIRD (A);

    g.   Failing to pay the Plaintiff's commissions "within the following month" after Smart Moms received commissions from suppliers, as required by paragraph THIRD (C);

    h.   Failing to pay the Plaintiff increased commission percentages of 55%–70% on commissions credited to Smart Moms after March 1, 2022, as promised in the March 1, 2022, email;

     i.   Failing to pay the Plaintiff "any and all compensation earned" prior to termination, including commissions on pre-termination bookings that were received from suppliers after termination, as required by paragraph FIFTEENTH.

80. As a direct and proximate result of Smart Moms' breaches, the Plaintiff has suffered substantial economic damages in the form of unpaid and underpaid commissions, plus interest.

## COUNT VIII
## PROMISSORY ESTOPPEL/IMPLIED-IN-FACT CONTRACT

81. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

82. Through the March 1, 2022, email and subsequent communications and course of dealing, the Defendants clearly and unambiguously promised the Plaintiff that she would receive increased commission percentages (55%–70%) based on commission volume, leadership status, and satisfaction of Engagement criteria.

83. The Plaintiff reasonably and foreseeably relied on these promises by continuing to work with Smart Moms, devoting substantial time and effort to its business, assuming leadership responsibilities, and performing additional engagement tasks.

84. The Defendants knew or reasonably should have expected that the Plaintiff would rely on these promises.

85. The Defendants failed to honor their promises and instead paid the Plaintiff at lower commission rates or not at all.

86. Injustice can be avoided only by enforcing Defendants' promises and/or requiring the Defendants to compensate the Plaintiff for the benefits she conferred in reliance on those promises.

## COUNT IX
## DECLARATORY JUDGMENT (28 U.S.C. §2201)
## AS TO SMART MOMS TRAVEL LLC

87. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

88. An actual, present, and justiciable controversy exists between the Plaintiff and Smart Moms concerning, among other things:

    j.   Plaintiff's entitlement to unpaid and underpaid commissions on her bookings, including post-termination commissions on pre-termination bookings; and

    k.   The enforceability of any non-competition or non-solicitation provisions in the Agreement.

89. Smart Moms has taken the position, expressly or implicitly, that it owes the Plaintiff no additional commissions beyond what it has already paid and/or that any claim to further commissions is waived or barred, and has asserted rights under restrictive covenants to interfere with the Plaintiff's ability to work elsewhere in the travel industry.

90. The Plaintiff contends that she is entitled to all unpaid and underpaid commissions as alleged herein and that any non-competition or non-solicitation provisions are unenforceable because, among other reasons, Smart Moms materially breached the Agreement by failing to pay compensation owed, and/or because such covenants are unreasonable and contrary to applicable law and public policy.

91. A declaration of the parties' respective rights and obligations will resolve this controversy and afford relief from uncertainty and insecurity.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AS TO DEFENDANT JOHNSON

92. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

93. At all relevant times, Johnson knew that Plaintiff derived her livelihood and professional identity from her reputation as an honest and trustworthy travel advisor and Team Leader and that Plaintiff's relationships with clients, agents, and host agencies depended on that reputation.

94. Johnson also knew that Plaintiff had recently been summarily terminated or forced out of Smart Moms and was particularly vulnerable to reputational attacks and public shaming within the Smart Moms community.

95. Notwithstanding that knowledge, Johnson intentionally recorded and disseminated the Broadcast—which lasted nearly an hour—to dozens of agents, falsely accusing the Plaintiff, as part of "leadership," of being "corrupted," engaging in "lie cheat steal issues," manipulating payroll, "taking from" Johnson, and "stealing from somebody else," and rhetorically asking whether Plaintiff and others would "steal that money somewhere else" or "sell [themselves] somewhere else."

96. Johnson framed these accusations as a moral and spiritual indictment of Plaintiff's character, stating that those who participated in the alleged scheme had done "bad things" and needed to "come back," "repent," and "come to the light," while presenting herself as a righteous victim who would "let God fight [her] battles."

97. Johnson made and repeated these accusations despite admitting in the same Broadcast that she "didn't know the discussions that had been had," "didn't know how things happened," had not "dig[g] into those resignations," and "didn't even know" what specific agents had done or whether they were "involved."

98. Johnson's conduct in publicly branding the Plaintiff a thief and morally corrupt person, in a captive audience consisting of the Plaintiff's colleagues and potential business partners, while confessing ignorance of the facts and leveraging religious imagery and moral condemnation, was extreme and outrageous and exceeded all bounds of decency tolerated in a civilized society.

99. Johnson either intended to cause the Plaintiff severe emotional distress or acted with reckless disregard of the near certainty that such distress would result from her conduct.

100. As a direct and proximate result of Johnson's conduct, the Plaintiff has suffered severe emotional distress, including but not limited to anxiety, humiliation, sleeplessness, depression, difficulty concentrating, and other physical and emotional manifestations of distress that have interfered with her ability to work and carry-on daily activities.

## COUNT XI
## NEGLIGENCE AS TO DEFENDANT JOHNSON

101. The Plaintiff realleges and incorporates by reference paragraphs 1–49 above as if fully set forth herein.

102. As the owner and leader of Smart Moms, Johnson owed the Plaintiff a duty to exercise reasonable care in investigating and communicating about alleged wrongdoing by the Plaintiff, particularly where Johnson chose to speak authoritatively to a large audience of agents and sub-agents who knew and did business with the Plaintiff.

103. Johnson further owed the Plaintiff a duty to refrain from making or publishing false factual accusations of criminal and professional misconduct that she knew or should have known would foreseeably harm the Plaintiff's reputation, economic interests, and emotional well-being.

104. Johnson breached her duties in one or more of the following ways:

    l.  Failing to conduct any meaningful or individualized investigation into the Plaintiff's conduct before publicly accusing her of "lie cheat steal" behavior, corruption, payroll manipulation, and "stealing" money;

    m.  Admitting that she did not know "how things happened," what discussions had occurred, or even what particular agents "did" or whether they were "involved," yet nonetheless treating all "liaisons" and "team leaders," including the Plaintiff, as guilty and publicly labeling them as thieves and wrongdoers;

    n.  Terminating all liaisons and team leaders, including the Plaintiff, on the theory that they were "all affected by" the alleged misconduct, and then using that same uninvestigated assumption to justify defamatory accusations in the Broadcast;

    o.  Choosing to deliver those accusations in a dramatic, emotionally charged Broadcast to a wide professional audience rather than in a measured, private, and factual communication.

105. Johnson knew or reasonably should have known that her conduct created an unreasonable risk of causing the Plaintiff significant reputational, economic, and emotional harm.

106. As a direct and proximate result of Johnson's negligence, the Plaintiff suffered the damages described above, including loss of reputation, loss of business opportunities and commissions, and emotional distress with accompanying physical symptoms.

## COUNT XII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AS TO DEFENDANT JOHNSON

107. The Plaintiff realleges and incorporates by reference paragraphs 1-49 above as if fully set forth herein.

108. Johnson's negligent conduct in falsely and publicly accusing the Plaintiff of theft, corruption and serious professional misconduct, as set forth above, created an unreasonable risk of causing the Plaintiff severe emotional distress.

109. It was reasonably foreseeable to Johnson that publicly branding the Plaintiff—a long-standing agent and Team Leader—as a thief and morally corrupt person before a large group of her professional peers and potential business partners would cause the Plaintiff profound emotional upset, humiliation, and mental anguish.

110. The Plaintiff was in the "zone of risk" created by Johnson's conduct in that Johnson's accusations were directed squarely at the Plaintiff and a small, readily identifiable group of leaders of which the Plaintiff was a part, and Johnson knew that the Broadcast would be heard by persons whose opinions of the Plaintiff were critical to her livelihood.

111. As a direct and proximate result of Johnson's negligent infliction of emotional distress, the Plaintiff has suffered severe emotional distress, including but not limited to anxiety, humiliation, sleeplessness, and other physical manifestations.

**<u>PRAYER FOR RELIEF</u>**

With regard to all counts, Plaintiff, Barbara Libbin, demands that judgment be entered against Defendants, Smart Moms Travel, LLC and Lauralyn Johnson. Plaintiff, Barbara Libbin, prays for judgment against these Defendants as follows:

a.  Award of compensatory damages, including actual, consequential, and incidental damages, for Defendants' malicious defamatory conduct and other tortious acts alleged herein, in an amount to be determined at trial;

b.  Award of all unpaid and underpaid commissions and other contract damages, together with pre- and post-judgment interest as allowed by law.

c.  Award of reasonable attorney's fees and costs as permitted by contract and/or applicable law.

d.  Granting preliminary and permanent injunctive relief enjoining Defendants from (i) publishing or republishing the false and defamatory statements complained of herein; and (ii) attempting to enforce any non- competition or non-solicitation provisions against the Plaintiff based on the facts alleged in this Complaint.

e.  Granting a declaratory judgment consistent with Count IX, including a declaration of Ms. Libbin's rights to commissions and the unenforceability of any purported restrictive covenants asserted against her.

f.  Granting any such further and additional relief, at law or in equity, as the Court deems just and appropriate.

**<u>JURY DEMAND</u>**

Plaintiff Barbara Libbin respectfully demands a trial by jury on all issues so triable.

Dated: November 26, 2025

Respectfully submitted,

s/ **Joshua D. Ferraro**
Joshua D. Ferraro
Florida Bar No.: 0797391
jferraro@lesserlawfirm.com
LESSER, LANDY, SMITH & SIEGEL, PLLC
420 Columbia Drive, Suite 110
West Palm Beach, FL 33409
Telephone: (561) 655-2028