IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARBARA LIBBIN, et. al.

     Plaintiffs                              Case No.: 8-25-CV-03267-TPB-AEP

v.


LAURALYN JOHNSON, et. al.

     Defendants.


## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Plaintiffs, by and through the undersigned counsel, hereby file its response opposing Defendants' Motion to Dismiss (the "Motion") pursuant to the Middle District of Florida Local Rule 3.01.

## I.    Overview and Factual Background

This case arises from two interrelated categories of misconduct: (1) Defendants' failure to pay Plaintiff the commissions she earned under the parties' agreement and modified compensation structure, and (2) Defendant Johnson's subsequent public accusations that Plaintiff and other identifiable Smart Moms leaders were involved in "lie cheat steal" conduct, corruption, and theft.

Plaintiff Barbara Libbin was a successful Smart Moms travel advisor who entered into a written Independent Contractor Agreement with Smart Moms Travel, LLC in December 2021. The Agreement provided, among other things, that Plaintiff would receive 50% of commissions received by the agency on her sales, that commissions would be paid within the following month after Smart Moms received them from suppliers, and that Plaintiff would remain entitled to compensation earned prior to termination. Plaintiff alleges she performed at a high level, developed a substantial client base, and was elevated into leadership positions within Smart Moms, including liaison and Team Leader roles.

Plaintiff further alleges that on March 1, 2022, Johnson, acting on behalf of Smart Moms, sent a written email to Plaintiff and other agents announcing a revised compensation structure. According to the Complaint, Johnson expressly contrasted the prior 50% structure with new rates beginning at 55% and increasing to as much as 70% depending on production and leadership/engagement benchmarks, with additional percentages for Team Leaders and engagement bonuses. Plaintiff alleges Smart Moms at times paid her at rates above 50%, confirming the modified structure, and that she relied on these terms by continuing to sell travel, mentor agents, and perform leadership and engagement responsibilities.

The Complaint then alleges that, despite the Agreement and the March 1 compensation terms, Smart Moms failed and refused to pay Plaintiff all commissions due, including post-termination commissions on bookings made before her termination. Plaintiff further alleges that when she raised concerns and sought an accounting, Defendants did not provide a transparent or adequate accounting, and Johnson

ultimately terminated Plaintiff's relationship with Smart Moms while retaining commissions generated from Plaintiff's bookings.

The defamation-related allegations arise from what Plaintiff describes as a widely disseminated "Broadcast" and a later televised news interview. According to the Complaint, Johnson addressed Smart Moms agents and purported to explain "mass terminations and resignations" by stating, in substance, that all of her leadership were involved in "lie cheat steal issues," that there were payroll and split issues "authorized from various levels of leadership," and that certain leaders were "corrupted," were "taking from" her, and were "stealing from somebody else." Johnson also allegedly stated that she terminated all liaisons and team leaders because they were "all affected by it."

Plaintiff specifically alleges that she was, at the relevant time, a liaison and Team Leader and was widely known within the Smart Moms community as part of Johnson's leadership group. She further alleges that recipients of the Broadcast—including agents who knew Plaintiff and worked under her leadership—understood Johnson's references to "leadership," "liaisons," and "team leaders" involved in "lie cheat steal issues" and "stealing" to include Plaintiff. The Complaint alleges Johnson widely disseminated the Broadcast to agents, colleagues, sub-agents, and business contacts, and that portions were shared beyond Smart Moms.

Plaintiff also alleges that Johnson later appeared in an NBC Connecticut segment and repeated or amplified the same accusations of financial wrongdoing by former leaders. The Complaint alleges that viewers familiar with Smart Moms and its leadership, including existing and prospective clients and industry partners—reasonably understood the statements to refer to Plaintiff and the small, identifiable group of recently terminated leaders.

Finally, the Complaint alleges that Johnson made these accusations without a meaningful factual basis, including while admitting she did not know how the alleged issues occurred, what discussions had taken place, or what specific agents had done, yet publicly treated all liaisons and team leaders—including Plaintiff—as guilty. Based on these and related allegations, Plaintiff asserts claims sounding in defamation, contract and alternative compensation theories, declaratory relief, and emotional-distress-related torts. At this stage, Plaintiff has met her burden of stating a claim for relief against the Defendants. Because she has met her burden, the Court should deny the instant motion to dismiss in its entirety.

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only contain a "short and plain statement of the claim" showing that the pleader is entitled to relief. Fed.

R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the merits of the case or the weight of the evidence. Fed. R. Civ. P. 12(b)(6).

In evaluating a motion to dismiss, the Court must accept the complaint's well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. To be sufficient, the complaint must allege enough facts to state a claim for relief that is "plausible on its face," meaning the pleaded facts permit a reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

At this stage, the Court does not resolve factual disputes, weigh competing inferences, or decide whether Plaintiffs will ultimately prevail. Those issues are reserved for summary judgment or trial after the factual record is developed.

## III.    Argument

### a.    <u>The Court should deny the Defendant's Motion because it wrongly maintains that the Complaint is a shotgun pleading.</u>

Contrary to the Defendant's assertions, Plaintiffs state a plausible claim for relief against Defendants and does not plead in a "shotgun" manner. The Eleventh Circuit recognizes four categories of shotgun pleadings:

"the most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations f all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of realleging all preceding counts but is guilty of the venial sin of being replate with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendant are responsible for which acts or omissions or which the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F. 3d 1313, 1321-23 (11th Cir. 2015).

As to the fourth category of shotgun pleading, "the fact that defendants are accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Pleading one claim against multiple defendants is permitted if the "complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Id*. Shotgun pleadings fail, "in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F. 3d at 1323. See Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1140 (S.D. Fla. June 11, 2018) (holding the "Court does not read Weiland to prohibit all instances where a count lodges a claim against multiple defendants, but rather only where such a claim fails to provide defendants with adequate notice of the claims against them.").

Here, Defendant's motion should be denied because the Plaintiff's Complaint **does no**t improperly assert its counts against Defendant in the form of a shotgun pleading. Plaintiffs correctly avers that both Defendants are responsible for the alleged conduct, that is, Defendant Johnson's publication and republication of the defamatory statements and Defendant Smart Moms' liability for the same conduct through agency, course-and-scope, and ratification, as well as Smart Moms' separate contractual and compensation-related misconduct, all of which are pled in separately labeled counts with sufficient factual detail to provide fair notice of the claims and the grounds upon which they rest. Courts within the Eleventh Circuit have denied motions to dismiss complaints as impermissible shotgun pleadings where multiple claims are asserted against multiple defendants if all defendants could plausibly share collective responsibility for the alleged conduct.[1]

---

[1] *See Graziano v. Schelling. P.A.,* No. 2:22-cv-34-SPC-MRM, 2022 U.S. Dist. LEXIS 212662, at *4 (M.D. Fla. Nov. 22, 2022) (denying a motion to dismiss finding "[a]lthough [defendant] is correct that some allegations reference multiple 'defendants,' this is permissible as multiple defendants could be responsible for engaging in a certain action."); *see also Griffith v. Landry's Inc.,* No. 8:14-cv-321-T-35JSS, 2016 U.S. Dist. LEXIS 196397, at *9 (M.D. Fla. May 17, 2016) (denying a motion to dismiss a complaint as an impermissible shotgun pleading alleging a failure to "mak[e] specific allegations against each defendant individually" on the grounds that "such a distinction between defendants in a complaint is unnecessary 'when the Plaintiff is actually referring to the conduct of all Defendants collectively."') (internal citation omitted); *Humphries v. Equifax Info. Servs., LLC,* No. 2:22-cv-00307-ACA, 2022 U.S. Dist. LEXIS 156064, at *7 (N.D. Ala. Aug. 30, 2022) ("The court rejects Chase's argument that Christen impermissibly lumps Chase and Capital One together without pleading facts particular to each separate entity. The fact that Christen alleges the same claims apply in equal measure to both Chase and Capital One does not make Christen's amended complaint a shotgun pleading"); *Microsoft Corp. v. Linked-PC, Inc.,*

Defendants' reliance on one case, which is not even on point, requiring greater separation of allegations among multiple defendants is misplaced. Those cases typically involve complaints that lump together legally distinct entities without alleging a plausible basis for each defendant's participation in the same wrongful conduct. This case is different. Plaintiffs do not allege that Defendant Johnson and Defendant Smart Moms Travel, LLC are the same entity, nor do Plaintiffs rely on a vague "alter ego" or successor theory to plead collectively. Rather, Plaintiffs expressly allege distinct roles for each Defendant in the same course of conduct: Johnson as the individual who made and disseminated the defamatory statements, and Smart Moms as the entity liable for that conduct through agency, course-and-scope authority, and ratification, while also being independently liable for the commission and compensation-related breaches. Because the Complaint plausibly alleges how both Defendants participated in or are responsible for the challenged conduct, pleading certain factual allegations collectively as to "Defendants" is proper and does not render the Complaint a shotgun pleading.

---

No. 2:18-cv-121-FtM-38MRM, 2018 U.S. Dist. LEXIS 139682, at *10 (M.D. Fla. Aug. 17, 2018) (permitting a joint pleading against a corporation and its two key principals where the "counts are based on common factual allegations made against all Defendants."); *Miller v. Gov't Emps. Ins. Co.,* No. 3:19-cv-1133-J-34JRK, 2020 WL 2425735, at *4 (M.D. Fla. May 12, 2020) (refusing to dismiss complaint as impermissible shotgun pleading where the plaintiff, among other things, asserted "the same breach of contract claim against all four Defendants based on the same conduct - refusal to pay monetary benefits pursuant to her insurance policy.").

**b. Defendants had fair notice of Plaintiffs' claims, and their Motion confirms they understood the allegations.**

"Importantly, a complaint is not a shotgun pleading merely because it asserts a claim against multiple defendants. The fact that defendants are accused collectively does not render the complaint deficient. The problem arises only when doing so fails to provide defendants with adequate notice of the claims against them." *Posada v. Aspen Spcialty Ins. Co.,* No. 8:22-cv-1578-CEH-AAS, 2023 U.S. Dist. LEXIS 55419, at *17 (M.D. Fla. March 30, 2023) (citing *Weiland,* 792 F. 3d at 1323) (internal citations omitted).

Plaintiffs' Complaint specifically alleges Defendant Johnson's conduct as the individual who made and disseminated the defamatory statements and separately alleges Smart Moms' liability for that same conduct through agency, course-and-scope, and ratification, while also pleading separate contract and compensation-related claims against Smart Moms. In other words, the Complaint does not merely "lump" unrelated defendants together; it alleges a shared course of conduct with distinct roles for each Defendant. See, e.g., allegations concerning Johnson's publication of the Broadcast and Smart Moms' vicarious liability and compensation obligations. Defendants' Motion itself confirms they had fair notice. Defendants do not claim confusion as to what claims are being asserted; rather, they substantively challenge specific counts (including promissory estoppel, declaratory relief, and emotional-distress-related counts) and raise count-specific legal arguments. A defendant cannot credibly

argue, on the one hand, that it lacks notice of the claims, while, on the other hand, filing a detailed motion addressing those claims on the merits.

Nor is this a case where imprecise pleading materially increased the burden of understanding the claims. See *Weiland*, 792 F.3d at 1324. This is a straightforward action involving two defendants and a common nucleus of facts. The Complaint is organized into separately labeled counts and provides more than sufficient notice under Rules 8 and 10. Accordingly, Defendants' shotgun-pleading argument should be denied.

**c.  <u>If the Court, nonetheless, finds that the Complaint is a shotgun pleading, its claims are not subject to dismissal with prejudice, and Plaintiffs' are entitled to replead their Complaint.</u>**

The Eleventh Circuit obligates courts to give plaintiffs one opportunity to replead a complaint in the following circumstance:

> [w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court ***must*** sua sponte give him one chance to replead before dismissing his case with prejudice on non- merits shotgun pleading grounds. In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings.

*Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1296 (11th Cir. 2018) (footnote omitted) (emphasis added).

Plaintiffs filed one Complaint and it has not been amended. To the extent the Court finds the Complaint is a shotgun pleading, the Court may not dismiss it with prejudice and must allow Plaintiffs one opportunity to replead their Complaint.

### d. <u>Defendants' Argument Overstates Florida Law and Does Not Warrant Dismissal of the NEID and the IIED at the Pleading Stage</u>

Defendants' argument improperly asks the Court to resolve fact questions about the severity, causation, and physical manifestations of Plaintiff's emotional distress at the pleading stage. Whether Plaintiff's emotional distress was sufficiently severe, whether it produced discernible physical symptoms, and whether those symptoms were proximately caused by Defendants' conduct are factual issues not appropriately resolved on a Rule 12(b)(6) motion. At this stage, the Court must accept Plaintiff's allegations as true, including Plaintiff's allegations that Defendants' public accusations caused severe emotional distress and physical manifestations of that distress.

To be sure, Defendants cite *Zell v. Meek*, 665 So. 2d 1048 (Fla. 1995), for Florida's impact-rule framework in negligent infliction cases. But *Zell* does not authorize dismissal simply because Defendants dispute the degree of Plaintiff's distress or the causal connection between Defendants' conduct and Plaintiff's symptoms. *Zell* itself discusses causation and timing as issues to be evaluated in determining whether psychic trauma caused a discernible physical injury, rather than automatic pleading-stage bars in every case. Moreover, Defendants' reliance on Florida's impact rule is overbroad.

Even if Defendants' argument were directed to Count XII alone, it does not foreclose Plaintiff's recovery of emotional-distress damages arising from her defamation-based and other intentional tort claims. The Florida Supreme Court has expressly recognized that the impact rule does not apply to intentional torts such as defamation, invasion of privacy, and intentional infliction of emotional distress. *Fla. Dept. of Corr. v. Abril*, 969 So. 2d 201 (Fla. 2007). Thus, Defendants cannot use *Zell* to eliminate emotional-distress damages across the case as a whole.

Defendants are correct that Florida imposes a high standard for intentional infliction of emotional distress ("IIED"). But their motion goes too far by asking the Court to recharacterize and minimize Plaintiffs' allegations at the pleading stage. At this stage, the Court must accept the Complaint's factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. Under that standard, Count X is sufficiently pleaded. Florida recognizes an IIED claim where a defendant's conduct is intentional or reckless, extreme and outrageous, and causes severe emotional distress. The Florida Supreme Court has described the required conduct as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and "utterly intolerable in a civilized community." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985).

Here, Plaintiffs allege far more than an ordinary business dispute or isolated insult. Plaintiffs allege that Johnson publicly accused Plaintiffs and an identifiable group of Smart Moms leaders of "lie cheat steal issues," corruption, and "stealing," and did so to a professional audience of agents, subagents,

and business contacts who knew Plaintiff's role as a Team Leader/liaison. Plaintiffs further allege that Johnson made and republished those accusations without a factual basis; while admitting she did not know the relevant facts or what specific individuals had done, and nevertheless treated all liaisons and team leaders as implicated. Plaintiffs also allege the accusations were amplified beyond the internal audience, including through later media statements. Taken as true, these allegations plausibly describe intentional or reckless conduct designed to humiliate Plaintiff, and brand her as dishonest in her profession. These allegations are materially different from the routine commercial disagreements and generalized insults on which Defendants rely. At minimum, the Complaint plausibly alleges conduct that, in context, could be found sufficiently outrageous to support an IIED claim after factual development.

Accordingly, Defendants' motion should be denied to the extent it asks the Court to resolve disputed factual questions at the pleading stage regarding the nature, severity, and extent of Plaintiff's emotional harm, and denied in any event to the extent it seeks to categorically bar emotional-distress damages tied to Plaintiff's defamation and other intentional tort claims. Defendants likewise improperly invite the Court to weigh facts and adopt Defendants' competing characterization of the alleged conduct. Although whether conduct is "outrageous" under Florida law is ultimately a legal question, that determination must be made on a developed factual record—not on Defendants' Rule 12 attempt to

minimize the scope, audience, and seriousness of the accusations alleged in the Complaint. Accepting the pleaded facts as true, both the NEID and IIED counts should proceed to discovery.

### e. Count XI Is Supported by Independent Facts and Is Not a Duplicative Defamation Claim

Defendants' duplicative-tort argument fails because Plaintiff's negligence claim is not based solely on the defamatory words themselves; it is also based on Johnson's independent negligent conduct in failing to investigate and verify the truth of criminal accusations before making them. Florida law bars only an "end-run" defamation claim where the separate tort is not supported by independent facts but permits "separately pled claims supported by independent factual allegations" See *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992) (separate claims may proceed when "properly pled upon the existence of independent facts").

Here, Plaintiffs specifically alleges Johnson admitted she "didn't know" key facts, "didn't dig into" the resignations, and effectively made blanket decisions without determining what any particular person had done. *Compl.* ¶¶ 43–44. Plaintiffs further allege Johnson publicly accused Plaintiff and other leaders of theft/corruption despite admitting she did not know what specific individuals had done or whether they were involved. *Id*. ¶¶ 44–45. The Complaint also expressly alleges that, at a minimum, Johnson failed to exercise reasonable care to ascertain the truth or falsity of those accusations before

publishing them. *Id*. ¶ 46. Count XI then pleads this theory directly in that the Defendants owed a duty to exercise reasonable care in investigating and communicating accusations of financial misconduct, and breached that duty by, among other things, failing to conduct any meaningful or individualized investigation before accusing Plaintiff of theft, relying on unverified assumptions, and treating Plaintiff as guilty without factual support. Those allegations describe negligent investigation and negligent verification conduct independent of the publication itself, which is sufficient at the pleading stage. Accordingly, the negligence count should be allowed to proceed to discovery.

### f.  Count VIII Is Properly Pleaded in the Alternative to Count VII

Defendants' challenge to Count VIII fails because Plaintiffs are expressly permitted to plead contract and non-contract theories in the alternative at the pleading stage. Federal Rule of Civil Procedure 8(d)(2) authorizes alternative pleading, and Rule 8(d)(3) further permits inconsistent claims. Florida Rule of Civil Procedure 1.110(g) expressly provides that a party may plead alternative statements of a claim "in separate counts" and may assert separate claims "regardless of consistency." That is exactly what Plaintiff has done here. In Count VII, Plaintiff alleges breach of contract based on the Independent Contractor Agreement and the March 1, 2022, compensation email. *Compl*. ¶¶ 77–80. In Count VIII, pled in the alternative, Plaintiff alleges that through the March 1, 2022 email, subsequent communications, and the parties' course of dealing, Defendants made clear compensation promises (including increased commission percentages and leadership/engagement-based compensation), that

Plaintiff relied on those promises by continuing to work and perform additional responsibilities, and that Defendants failed to honor them. *Id*. ¶¶ 81–86. The Eleventh Circuit has recognized this exact pleading structure, describing promissory estoppel as an "alternative avenue of relief". See *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677 (11th Cir. 1999). Florida courts likewise permit a plaintiff to pursue breach of contract and promissory estoppel in separate counts at the pleading stage, subject to later proof as to whether an express contract governs the precise promise at issue. See, e.g., *Doe v. Univision Television Group, Inc.*, 717 So. 2d 63 (Fla. 3d DCA 1998); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289 (S.D. Fla. 2019) (recognizing alternative pleading of contract and promissory estoppel theories and that dismissal is premature until an express contract is proven to govern the same subject).

Here, Count VIII is properly pled as a fallback theory to the extent Defendants dispute that the ICA and/or March 1, 2022, email created an enforceable contract governing the specific increased commission percentages, bonuses, and leadership compensation Plaintiff seeks. The Complaint alleges Johnson's March 1, 2022 email announced a new compensation structure (55%–70%, plus Team Leader and Engagement components), Plaintiff continued working and performing additional duties in reliance on those promises, and Smart Moms at times paid Plaintiff at the higher levels consistent with that structure before later underpaying or refusing to pay. *Compl*. ¶¶ 16–21, 22–25, 82–86.

Accordingly, Defendants' motion to dismiss Count VIII should therefore be denied.

### g. **Defendants' Attack on Vicarious Liability Fails Because the Complaint Pleads Agency, Scope, and Ratification in Detail.**

Defendants' challenge to Plaintiff's vicarious-liability allegations fails because the Complaint pleads more than enough facts to plausibly impute Johnson's conduct to Smart Moms under respondeat superior, agency, and ratification. Under Florida law, a principal may be liable for the wrongful acts of its agent when the agent acted within the scope of authority or during the course of the agency to further the principal's interests; Florida law also recognizes principal liability based on ratification. *Trevarthen v. Wilson*, 219 So. 3d 69, 72 (Fla. 4th DCA 2017); *K Co. Realty LLC v. Pierre*, 376 So. 3d 730, 734 (Fla. 4th DCA 2023). General principles of vicarious liability establish that a principal is responsible for the wrongful acts of its agent if the agent was either acting "(1) within the scope of [its authority], or (2) during the course of [the agency] and to further a purpose or interest of the [principal]." *Valeo v. E. Coast Furniture Co.*, 95 So.3d 921, 925 (Fla. 4th DCA 2012). Additionally, a principal may still be liable for the acts of its agent which were outside the scope of the agent's authority if the principal subsequently ratifies the actions. See *McDonald v. Hamilton Elec., Inc.* of Fla., 666 F.2d 509, 514 (11th Cir. 1982). A principal may ratify an agent's actions which would have otherwise been outside the scope of its authority by accepting the benefit of the agent's actions. See *Mercury Ins. Co. of Fla. v. Sherwin*, 982 So.2d 1266, 1270 (Fla. 4th DCA 2008) ("A principal may not accept the benefits of a transaction negotiated by the agent and disavow the obligations of that same transaction."). In other words:

> '[w]hen an agent acts for his principal, and the principal accepts the fruits of the agent's efforts, the principal must be deemed to have adopted the methods employed, and he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the means by which they were acquired.'

*Fredrick v. Squillante*, 144 So.2d 848, 849 (Fla. 2d DCA 1962) (quoting *Chase v. Sullivan*, 99 Fla. 202, 126 So. 359, 360 (1930).

Here, Plaintiff expressly alleges that Johnson was, at all relevant times, the owner, manager, and controlling member of Smart Moms, and that her acts are attributable to Smart Moms under respondeat superior, agency, and ratification. Compl. ¶¶ 7–8. Plaintiff further alleges that Johnson acted on behalf of Smart Moms in company operations and communications, including compensation announcements and management decisions affecting agents. *Id*. ¶¶ 16–18, 25. Those allegations alone plausibly support an agency relationship and authority to speak for the company.

The Complaint also pleads the specific facts tying Johnson's defamatory statements to Smart Moms' business and channels: Plaintiff alleges Johnson disseminated the Broadcast using Smart Moms' communication channels and agent lists, and that she purported to speak in her capacity as owner of Smart Moms while explaining company decisions. *Id*. ¶ 69. Plaintiff further alleges that Johnson was acting within the course and scope of her authority as owner, manager, and agent of Smart Moms when she recorded and disseminated the Broadcast. *Id*. ¶ 68. At the pleading stage, those are precisely the kinds of allegations that place Smart Moms on notice of the vicarious-liability theory.

Plaintiff also pleads ratification. Specifically, the Complaint alleges Smart Moms "authorized, ratified, and/or failed to take reasonable steps to correct or retract Johnson's defamatory statements after being put on notice of their falsity." *Id*. ¶ 70. In addition, Plaintiff alleges Johnson repeated and amplified the same accusations in a later NBC interview, broadening the audience and increasing the harm. *Id*. ¶¶ 38–40. Those allegations plausibly support ratification.

The Complaint clearly pleads with the substantive facts and doctrines by which Smart Moms is liable for Johnson's conduct, and Defendants are plainly on notice of that theory. Accordingly, Defendants' motion should be denied as to Plaintiff's vicarious-liability allegations.

## IV.    Conclusion

For all of the foregoing reasons, Defendants' Motion to Dismiss should be denied. The Complaint is not a shotgun pleading, adequately places both Defendants on fair notice of the claims asserted, and plausibly alleges facts supporting each challenged count, including Plaintiff's alternative compensation theories, emotional-distress-related claims, negligence claim based on independent negligent investigation/verification conduct, and Smart Moms' liability under agency, respondeat superior, and ratification principles.

At this stage, the Court must accept Plaintiffs' well-pleaded allegations as true and may not resolve factual disputes or adopt Defendants' competing characterization of the facts. Defendants' Motion

repeatedly asks the Court to do just that. The Complaint more than satisfies Rule 8 and Rule 12(b)(6), and discovery should proceed.

    Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, and only to the extent the Court determines any count or allegation should be clarified or repleaded, Plaintiffs respectfully request leave to amend.

PLAINTIFFS,

BY: _____

Jeffrey Ment, Esq.
Federal Bar No.: ct12299
Ment Law Group, PC
225 Asylum Street, 15th Floor
Hartford, CT 06103
860-969-3200
860-969-3210 (Fax)
jment@mentlaw.com

**CERTIFICATION**

I hereby certify that on February 24, 2026 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____

Jeffrey L. Ment