**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BARBARA LIBBIN, et al.,

    Plaintiffs,

v.                                                                    Case No. 8:25-cv-3267-TPB-AEP

LAURALYN JOHNSON, et al.,

    Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**"DEFENDANTS' MOTION TO DISMISS COMPLAINT"**

This matter is before the Court on "Defendants' Motion to Dismiss Complaint

and Incorporated Memorandum of Law," filed on February 2, 2026.  (Doc. 16).  On

February 24, 2026, Plaintiffs Barbara Libbin and I Love Ears Travel LLC filed a

response in opposition.  (Doc. 18).  After reviewing the motion, response in

opposition, court file, and the record, the Court finds as follows:

**Background**[1]

This case stems from a business relationship gone sour.  Plaintiff Barbara

Libbin is a professional travel advisor who previously operated her travel business

(Plaintiff I Love Ears Travel LLC) in affiliation with Defendant Smart Moms, which

was owned, managed, and controlled by Defendant Lauralyn Johnson.  Smart

---

[1] The Court accepts as true the facts alleged in Plaintiff's complaint for purposes of ruling
on the pending motion to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen
ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual
allegations contained in the complaint.").  The Court is not required to accept as true any
legal conclusions couched as factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 286
(1986).

Moms operates as a travel agency business that recruits travel advisors as independent contractors and markets Disney and other family travel services to consumers across the nation.

On December 21, 2021, Libbin entered into a written independent contractor agreement that specified, among other things, the payment of commissions received by the travel business for her sales. According to the complaint, Libbin consistently performed at a high level and was elevated into leadership roles, including as a liaison and team leader who oversaw and mentored other agents on behalf of Smart Moms. On March 1, 2022, Johnson sent an email outlining a new commission structure, modifying the prior agreement's compensation terms and increasing Libbin's commission split.

At some point in time, however, Plaintiffs contend that Smart Moms failed and refused to pay all commissions owed. When Libbin raised concerns about the unpaid and underpaid commissions and sought an accounting, Defendants failed to comply. Then, on October 29, 2025, Johnson terminated Plaintiffs' relationship with Smart Moms.

Shortly after the termination, Johnson recorded and published a lengthy pre-recorded audio message to dozens of Smart Moms agents and leadership. In this broadcast, Johnson purported to explain why there had been mass terminations and resignations within the leadership. Johnson stated that "all of [her] leadership were involved in the lie cheat steal issues that were going on." Johnson described issues with payroll and splits, and she described the situation as "literally just

about like taking from me." She told listeners that "everybody who's getting paid incorrectly needs to leave the agency period," that she had "terminated all of the liaisons [and] terminated all of the team leaders because they were all affected by it," and that "everybody that [she] knew was . . . accepting this even had to go." Johnson further stated that leadership had offered agents a "pay situation that's, you know, stealing from somebody else" and rhetorically asked departing agents whether they were "going to steal that money somewhere else," "work for it somewhere else," or "sell [themselves] somewhere else." Libbin had been a liaison and team leader and was widely known within the Smart Moms community to be part of Johnson's "leadership" group. This message was disseminated to Smart Moms agents, including Libbin's colleagues and sub-agents, as well as to her business contacts. In addition, Libbin alleges that portions of the broadcast were shared with third parties outside of Smart Moms. She contends that the statements that accused Libbin of involvement in "lie cheat steal issues," corruption, payroll and commission manipulation, and "stealing" money from Smart Moms are false.

Then, on November 14, 2025, Johnson appeared in a televised news segment on NBC Connecticut concerning Smart Moms and its former agents. In the NBC interview, Johnson discussed the same "lie cheat steal" issues she had previously referenced in the broadcast and repeated the accusation that former leaders had engaged in financial wrongdoing and misconduct with respect to commissions and agency funds. Libbin asserts that she never stole, embezzled, misappropriated, or

unlawfully retained any funds belonging to Smart Moms or its principals, that she never manipulated commission splits, that she never participated in any scheme to take the agency's share of commissions, and that any commissions above 50% were expressly authorized by the commission structure.

On November 26, 2025, Plaintiffs filed the instant lawsuit asserting claims for: (1) defamation *per se* as to Johnson, (2) defamation as to Johnson, (3) defamation by implication as to Johnson, (4) defamation *per se* as to Smart Moms, (5) defamation as to Smart Moms, (6) defamation by implication as to Smart Moms, (7) breach of contract, (8) promissory estoppel/implied-in-fact contract, (9) declaratory judgment as to Smart Moms, (10) intentional infliction of emotional distress as to Johnson, (11) negligence as Johnson, and (12) negligent infliction of emotional distress as to Johnson.  Defendants have moved to dismiss the complaint as a shotgun pleading, and they have moved to dismiss several counts for failure to state a claim for relief.

### Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual

allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at \*2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

<u>Analysis</u>

In the motion to dismiss, Defendants argue the complaint should be dismissed as a shotgun pleading. Defendants further argue that Plaintiffs fail to state any facially sufficient claims in Counts IV, V, VI, VIII, IX, X, XI, and XII, and further fail to present any basis for preliminary or permanent injunctive relief.

### *Shotgun Pleading*

Defendants argue that the complaint constitutes a shotgun pleading. A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading." *See Anderson v. Dist. Bd. Of*

*Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh

Circuit has identified four primary types of shotgun pleadings:

(1)    Complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;

(2)    Complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;

(3)    Complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and

(4)    Complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir.

2015). A district court must generally permit a plaintiff at least one opportunity to

amend a shotgun complaint's deficiencies before dismissing the complaint with

prejudice. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

The fact that Defendants are accused of collective action does not render the

complaint deficient.  Pleading against multiple defendants is permitted if the

complaint can be read to assert that all defendants are responsible for the alleged

conduct.  *See Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000); *Araica v.*

*Royal Caribbean Cruises Ltd.*, No. 19-24988-Civ-Scola, 2020 WL 1033638, at *1

(S.D. Fla. Mar. 3, 2020) (declining to dismiss complaint where all defendants could

have participated in every act).  What is important is that the complaint give the

defendants adequate notice of the claims against them and the grounds upon which each claim rests. *See Weiland*, 792 F.3d at 1323. In this case, Plaintiffs aver that both Defendants – Johnson and her company – are responsible for the alleged conduct, and both of Defendants could plausibly share collective liability. The motion is denied as to this ground.

Yet, the Court believes that the complaint constitutes a shotgun pleading in another way. The complaint is confusing in that it generally refers to "the Plaintiff" in most places although there are two listed Plaintiffs – Libbin and her company. Based on this issue, it is sometimes difficult to ascertain the nature of the factual allegations and the claims – for instance, is the company attempting to assert a claim for negligent infliction of emotional distress or intentional infliction of emotional distress? It is unclear, at best. The Court will grant leave to amend. Plaintiffs should take care to clarify this point in the amended complaint. In particular, Plaintiffs should properly identify the parties in the factual allegations, and Plaintiffs should specifically note as part of each count which Plaintiff (or Plaintiffs) is asserting the claim against which Defendant (or Defendants). Plaintiffs should make sure that they have a basis to assert a claim on behalf of each Plaintiff listed in that claim.

### Count IV, V, and VI - Vicarious Liability

Defendants seek dismissal of Counts IV, V, and VI for failure to state any vicarious liability claims against Smart Moms. Upon review, the Court finds that these counts are facially sufficient. The complaint pleads enough facts to plausibly

impute Johnson's conduct to Smart Moms under various legal theories, such as respondeat superior, agency, and ratification.  For instance, Plaintiffs allege that Johnson was the owner, manager, and controlling member of Smart Moms.  Plaintiffs also allege that Johnson acted on behalf of Smart Moms in company operations and communications, including compensation announcements and management decisions at issue in this case.  Plaintiffs also allege that Johnson disseminated the allegedly defamatory broadcast message using Smart Moms' business and channels, and that Johnson was acting within the course and scope of her authority as the owner, manager, and agent of Smarts Moms when she did so.  The motion is denied as to this ground.

### *Count VIII – Promissory Estoppel/Implied-in-Fact Contract as to Smart Moms*

In Count VIII, Plaintiffs assert a promissory estoppel or implied-in-fact contract claim.  Defendants argue that Plaintiffs have asserted the existence of a contract, making this claim improper.  The Court agrees.  Count VIII specifically incorporates paragraphs 1-49 of the complaint, which include specific allegations of written agreements between the parties.

In addition, the Court notes that it is not proper to combine promissory estoppel and implied-in-fact contract in one count.  Among other things, these appear to be different and distinct claims, with different available defenses, that present potentially inconsistent legal theories for recovery.[2]  Consequently, this count is dismissed, with leave to amend.

---

[2] To prevail on a claim for promissory estoppel, a plaintiff must prove that (1) the defendant made a promise, (2) that the defendant should have expected that the plaintiff would rely

*Count IX – Declaratory Judgment*

Defendants seek dismissal of Count IX because declaratory relief is not warranted when it merely duplicates the issues raised by an existing damages claim.  Defendants also argue that Plaintiffs do not demonstrate an immediate, concrete dispute regarding restrictive covenants.  Plaintiffs do not address Defendants' arguments in their response in opposition.

The Declaratory Judgment Act states, in pertinent part

> In a case of actual controversy within its jurisdiction …
> any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be
> sought.  Any such declaration shall have the force and
> effect of a final judgment or decree and shall be
> reviewable as such.

28 U.S.C. § 2201(a).  Importantly, the United States Supreme Court has recognized that "[t]he Declaratory Judgment Act was an authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

---

on the promise, and (3) that the plaintiff did rely on the promise to its detriment. *Funderburk v. Fannie Mae*, 654 F. App'x 476, 478 (11th Cir. 2016) (citing *Doll v. Grand Union Co.*, 925 F.2d 1363, 1371 (11th Cir. 1991)); *Myers v. 3073 Horseshoe Drive, LLC*, No. 2:23-cv-95-JES-NPM, 2024 WL 4040834, at *1 (M.D. Fla. Sept. 4, 2024).  To prevail on a claim for implied-in-fact contract, a plaintiff must prove: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." *Global Network Mgmt., Ltd. v. Centurylink Latin Am. Sols., Ltd. Liab. Co.*, 67 F.4th 1312, 1316-17 (11th Cir. 2023) (quoting *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)).

It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty

"The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." *Allstate Ins. Co. v. Employers Liability Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971).  The Act "permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty."  Purpose of Declaratory Judgments, 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed.).  To that end, many courts have concluded that "declaratory judgment is inappropriate solely to adjudicate past conduct."  *See, e.g.*, *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009) (collecting cases).

In Count IX, Plaintiffs ask the Court to declare Plaintiffs' entitlement to unpaid and underpaid commissions on bookings, including post-termination commissions on pre-termination bookings.  But this is essentially asking the Court to make a factual determination concerning possible acts and breaches of contract that Plaintiffs allege were committed in the past, and for which Plaintiffs seek monetary compensation in other courts of the complaint.  *See id.* (declining to exercise jurisdiction over declaratory judgment claim in similar circumstances).  Plaintiffs' request does not appear to involve purely legal rulings, nor does the requested relief seek a result that would lead to a change in conduct by either party.  At this point in time, there is no longer an active business relationship between the

parties, and a declaration from the Court would not alter Plaintiffs' course of action, which has already occurred and is not alleged to be ongoing.

The Declaratory Judgment Act's long-standing purpose is "to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty,'" and that purpose is not served by the relief Plaintiffs seek in this case. *See Bacardi USA, Inc. v. Young's Market Co.*, 273 F. Supp. 3d 1120, 1132 (S.D. Fla. 2016) (declining to exercise jurisdiction over declaratory judgment action); *Sierra Equity Group, Inc.*, 650 F. Supp. 2d at 1231 (same). Resolving this claim would not clarify the legal relations between the parties to avoid future violations or breaches. Instead, as presented by Plaintiffs, the key inquiries for the Court are backward-looking and require a fact-intensive investigation into the parties' past conduct – an investigation that would already be addressed in connection with Plaintiffs' breach of contract claims. The declaratory judgment claim is therefore duplicative of the breach of contract claim. *See Bleau Fontaine Condo. Ass'n Number Three, Inc. v. Indian Harbor Ins. Co.*, No. 18-cv-22995, 2019 WL 1932785, at *2-3 (S.D. Fla. Jan. 10, 2019) (dismissing declaratory judgment claim and explaining that when determination of a breach of contract claim involves the same factual dispute as a declaratory judgment claim, the plaintiff is able to secure full and complete relief through the breach of contract claim). This portion of Count IX is dismissed, without leave to amend.

Plaintiffs also appear to ask the Court to make some sort of declaration regarding restrictive covenants. But the complaint is vague as to the existence and

nature of the restrictive covenants at issue, if any.  The only factual allegation concerning restrictive covenants is located in the "Nature of the Action" section of the complaint where Plaintiff(s) allege that Defendants have "refused to pay the Plaintiff 'any and all compensation earned' on her bookings and attempted to use restrictive covenants to chill her ability to continue working in the travel industry." The minimal information provided does not demonstrate an actual case or controversy that would permit a declaration.  Consequently, this portion of Count IX will be dismissed, with leave to amend.

### Count X – Intentional Infliction of Emotional Distress as to Johnson

In Count X, Plaintiffs assert an intentional infliction of emotional distress claim against Johnson.  This claim is due to be dismissed pursuant to the single action rule or single publication rule.  Under Florida law, a single publication gives rise to a single cause of action.  *See Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1278 (S.D. Fla. 2020) (quoting *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998)).  Courts routinely dismiss concurrent counts for related torts based on the same publication and underlying facts as a defamation claim.  *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014); *see also Maletta v. Woodle*, No. 2:20-cv-1004-JES-MRM, 2021 WL 1894023, at *5 (M.D. Fla. May 11, 2021) (Steele, J.) (explaining that "Florida courts have held that the outrageous conduct supporting a claim for IIED must be separate from, or independent of, the alleged defamation").  After all, "a plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply

by characterizing the alleged defamatory statements as 'outrageous.'" *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). Count X is based entirely on the conduct described in the defamation counts and therefore cannot serve as the basis for an independent tort.

Normally, the Court would grant leave to amend, but the Court declines to do so here. Considering the conduct alleged, the Court finds as a matter of law that it simply does not meet the standard of outrageousness required for intentional infliction of emotional distress. *See Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367, 1377 (S.D. Fla. 2014) ("As a matter of law, the allegations in this case cannot rise to the level of extreme and outrageous conduct so as to give rise to a valid claim of intentional infliction of emotional distress. Therefore amending this claim would be futile.").

To prove intentional infliction of emotional distress under Florida law, a plaintiff must prove: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct, *i.e.*, behavior that goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (citing *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594-95 (Fla. 2d DCA 2007)). "Liability does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Roberts v. Amtrust Bank*, No. 14-81266-CIV, 2014 WL 7273982, at *2 (S.D. Fla. Dec. 22, 2014) (quotation omitted). Even a clergyman falsely branded as

a thief in front of parishioners is unable to establish the requisite recklessness.  *See Legrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004) ("Although we recognize that being branded a thief in front of one's parishioners might certainly be unsettling, embarrassing, and/or humiliating for a member of the clergy, we do not believe that this alleged conduct is the type of extreme and outrageous conduct needed to support a claim for the intentional infliction of emotional distress as a matter of law.").  Plaintiffs simply cannot meet the required showing under these facts – the conduct, assuming it occurred, is simply not outrageous as a matter of law.  This claim is dismissed with prejudice, without leave to amend.

### *Count XI – Negligence as to Johnson*

In Count XI, Plaintiffs assert a negligence claim against Johnson.  This claim is barred by the single action or single publication rule because it is based on the same publication and underlying facts as the defamation claims, as discussed above. Although it appears highly unlikely that Plaintiffs will be able to state a facially sufficient claim based on these facts, in an abundance of caution, the Court will grant leave to amend, if Plaintiffs may do so in good faith.

### *Count XII – Negligent Infliction of Emotional Distress as to Johnson*

In Count XII, Plaintiffs assert a negligent infliction of emotional distress claim against Johnson.  Specifically, Plaintiffs allege that Johnson's negligent conduct in falsely and publicly accusing Libbin of theft, corruption, or professional misconduct "created an unreasonable risk of causing the Plaintiff severe emotional distress" and that she was in the "zone of risk."  Plaintiffs appear to further assert

that they have suffered severe emotional distress, including anxiety, humiliation, sleeplessness, and other physical manifestations.

This claim is barred by the single publication or single action rule because it is based on the same publication and underlying facts as the defamation claims, as discussed above.

This claim also fails because a claim for negligent infliction of emotional distress requires an adequately pled underlying claim of negligence. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). As discussed above, the negligence claim is barred by the single publication or single action rule, so there is no adequate underlying negligence claim.

In addition, this claim is barred by the impact rule. "The impact rule requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" *R.W. v. Armor Corr. Health Servs, Inc.*, 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) (quoting *Southern Baptist Hosp. of Fla. v. Welker*, 908 So. 2d 317, 320 (Fla. 2005)). "[T]he Florida Supreme Court held that 'psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist.'" *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1167 (M.D. Fla. 2023) (quoting *Brown v. Cadillac Motor Car Div.*, 468 So. 2d 903, 904 (Fla. 1985)).

Plaintiffs' claimed emotional distress does not flow from physical injuries that Plaintiffs sustained in an impact, and Plaintiffs cite no exception to the impact rule that would apply in this case. Plaintiffs therefore fail to state a negligent infliction of emotional distress claim. Although it appears highly unlikely that Plaintiffs will be able to state a facially sufficient negligent infliction of emotional distress claim based on these facts, in an abundance of caution, the Court will grant leave to amend, if Plaintiffs may do so in good faith.[3]

### *Injunctive Relief*

It appears that Defendants seek dismissal of Plaintiffs' requests for preliminary and permanent injunctive relief to restrain Defendants from publishing or republishing alleged defamatory statements. No motion for preliminary injunction or permanent injunction is pending before the Court at this time. The Court therefore does not find it appropriate to further address this request at the pleading stage.

### Conclusion

In this case, two separate plaintiffs have brought twelve different legal claims against two separate defendants concerning what appears to be, if proven, a rather straightforward factual scenario. It should surprise no one that Defendants responded by filing a motion to dismiss, which has been granted as indicated above. Generally, bringing multiple legal claims against multiple parties concerning the

---

[3] The Court further notes that as to I Love Ears Travel LLC, it does not appear that a corporation can assert a negligent infliction of emotional distress claim because a corporation cannot suffer from severe emotional distress.

same conduct results in a successful motion to dismiss, as opposed to a defendant answering a complaint and moving a case forward.

When faced with such a scenario, and not wanting a defendant to "win" the point, many plaintiffs "double down" and insist on trying to maintain multiple legal claims against multiple parties concerning the same conduct. Sometimes, after several rounds of time-consuming motions to dismiss, some plaintiffs are successful in maintaining multiple legal claims against multiple parties concerning the same conduct. Some plaintiffs may even make it as far as a jury trial where they then are faced with the prospect of drafting extremely long and confusing jury instructions involving multiple legal claims against multiple parties concerning the same conduct. And perhaps even more daunting, it becomes necessary to craft a verdict form that allows a jury to return a consistent verdict, and correctly award damages, on multiple legal claims against multiple parties concerning the same conduct. The odds of getting everything right in such a scenario are not great, so an appeal naturally follows. And sometimes this ineffective process has to start all over again.

Experience has shown that "less is more," and more is not better.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion to Dismiss Complaint and Incorporated Memorandum of Law" (Doc. 16) is **GRANTED IN PART** and **DENIED IN PART**.

2.  The complaint is **DISMISSED WITHOUT PREJUDICE** as a shotgun pleading.

3.  Counts VIII, IX (in part), XI, and XII of the complaint are **DISMISSED WITHOUT PREJUDICE** for failing to state a claim.

4.  Counts IX (in part) and X are **DISMISSED WITH PREJUDICE** for failing to state a claim.

5.  The motion is otherwise **DENIED**.

6.  Plaintiffs are directed to file an amended complaint on or before April 7, 2026.  Failure to do so will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 24th day of March, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE